

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

Telesis, II

ORIGINAL

    Plaintiff,

vs.

Durus Capital Management (N.A.), LLC,
Durus Capital Management, LLC, Durus
Life Sciences Fund, LLC, Durus Life
Sciences Master Fund Ltd., and Scott R.
Sacane

    Defendants.

§
§
§
§
§
§
§
§
§
§
§

**3-05CV1321-K**

CIVIL ACTION NO. _____

**FILED UNDER SEAL**

## TELESIS, II'S ORIGINAL COMPLAINT, VERIFIED
## APPLICATION FOR TEMPORARY INJUNCTION AND JURY DEMAND

TO THE HONORABLE COURT:

    Plaintiff Telesis, II brings this Original Complaint and Verified Application for Temporary Injunction against Defendants Durus Capital Management (N.A.), LLC ("Durus Managing Member"), Durus Capital Management, LLC ("Durus Portfolio Manager"), Durus Life Sciences Fund, LLC (the "Domestic Fund"), Durus Life Sciences Master Fund Ltd. (the "Master Fund"), and Scott R. Sacane ("Sacane") and respectfully shows the Court as follows:

### I. PARTIES AND SERVICE OF PROCESS

#### Telesis, II

    1.    Plaintiff Telesis II ("Telesis") is a partnership created under the laws of Texas with its principal place of business at 6162 E. Mockingbird Lane, Suite 106, Dallas, Dallas County, Texas.

Telesis, II's Original Complaint – Page 1

## Durus Capital Management (N.A.), LLC ("Durus Managing Member")

2.     Defendant Durus Managing Member is a foreign limited liability company, organized under the laws of the state of Delaware, with its principal place of business in Connecticut.   Durus Managing Member controlled the Domestic Fund until approximately October 9, 2003.   Durus Managing Member has conducted business in Texas generally, has conducted business in Texas by committing the torts as alleged herein in whole or in part in Texas, and otherwise has sufficient contacts with the State of Texas such that under the Texas Long-Arm Statute, this Court has personal jurisdiction over Durus Managing Member.

3.     More specifically, Durus Managing Member controlled the Domestic Fund and knew that its actions would affect Texas entities, including Telesis.  Employees and or agents of Durus Managing Member sent written communications, such as private placement memoranda, LLC Agreement(s), subscription documents, and investor presentations, to Telesis, and upon information and belief, other investors in Texas.  Employees and/or agents of Durus Managing Member had telephone calls with Telesis in Texas to discuss investments in the Domestic Fund and the Master Fund.     During these telephone calls, Durus Managing Member made misrepresentations to Telesis, which Telesis relied upon in entering into the Second Amended and Restated Limited Liability Operating Agreement dated November 1, 2001 (the "LLC Agreement") and in making a $5,000,000 capital contribution to the Domestic Fund.  Telesis executed the LLC Agreement in Texas and performed its obligations under the LLC Agreement, in whole or in part, in Texas.   Durus Managing Member's torts and intentional breaches of its duties were directed at Telesis, a Texas investor, and upon information and belief, other Texas investors.   Durus Managing Member's torts and intentional breaches of its duties caused substantial harm to Telesis, a Texas resident.

4.      Defendant Durus Managing Member does not maintain a regular place of business or a designated agent upon whom service of process may be had for causes of action arising out of Durus Managing Member's business done in the State of Texas.  Service of process on Durus Managing Member may be made pursuant to Tex. Civ. Prac. & Rem. Code § 17.044(b) and/or §17.044(a)(1) by serving the Secretary of State of Texas as agent for service of process for Durus Managing Member.  The Secretary of State is requested to forward a copy of process with this Complaint to Durus Managing Member at its home office: 20 Marshall Street, #320, Norwalk, Connecticut, 06854.  Because records of the Delaware Secretary of State and/or other public records reflect two additional addresses for Durus Managing Member, Telesis requests that the Secretary of State also forward copies of process and this Complaint to Durus Managing Member at (1) Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware, 19801 and (2) in care of Scott Sacane, 113 Post Road East, Westport, Connecticut, 06880.

### Durus Capital Management, LLC ("Durus Portfolio Manager")

5.      Defendant Durus Portfolio Manager is a foreign limited liability company, organized under the laws of the state of Delaware, with its principal place of business in Connecticut.  Durus Portfolio Manager was the portfolio manager for the Domestic Fund and the Master Fund.  Durus Portfolio Manager has conducted business in Texas generally, has conducted business in Texas by committing the torts as alleged herein in whole or in part in Texas, and otherwise has sufficient contacts with the State of Texas such that under the Texas Long-Arm Statute, this Court has personal jurisdiction over Durus Portfolio Manager.

6.      More specifically, Durus Portfolio Manager controlled the investments of the Domestic Fund and the Master Fund and knew that its actions would affect Texas entities,

including Telesis.   Employees and/or agents of Durus Portfolio Manager sent written communications, such as private placement memoranda, LLC Agreement(s), subscription documents, and investor presentations, to Telesis in Texas, and upon information and belief, other investors in Texas. Employees and/or agents of Durus Portfolio Manager had telephone calls with Telesis in Texas to discuss investments in the Domestic Fund and the Master Fund. During these telephone calls, Durus Portfolio Manager made misrepresentations to Telesis, which Telesis relied upon in entering into the LLC Agreement and in making a $5,000,000 capital contribution to the Domestic Fund which was ultimately invested in the Master Fund. Durus Portfolio Manager's torts and intentional breaches of its duties were directed at Telesis, a Texas investor, and upon information and belief, other Texas investors.   Durus Portfolio Manager's torts and intentional breaches of its duties caused substantial harm to Telesis, a Texas resident.

7.     Durus Portfolio Manager does not maintain a regular place of business or a designated agent upon whom service of process may be had for causes of action arising out of Durus Portfolio Manager's business done in the State of Texas.   Service of process on Durus Portfolio Manager may be made pursuant to Tex. Civ. Prac. & Rem. Code § 17.044(b) and/or §17.044(a)(1) by serving the Secretary of State of Texas as agent for services of process for Durus Portfolio Manager.  The Secretary of State is requested to forward a copy of process with this Complaint to Durus Portfolio Manager at its home office: 20 Marshall Street, #320, Norwalk, Connecticut, 06854.  Because the records of the Delaware Secretary of State and/or other public records reflect two additional addresses for Durus Portfolio Manager, Telesis requests that the Secretary of State also forward copies of process and this Complaint to Durus



Portfolio Manager at (1) Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware, 19801 and (2) in care of Scott Sacane, 113 Post Road East, Westport, Connecticut, 06880.

### Durus Life Sciences Fund, LLC (the "Domestic Fund")

8.    Defendant the Domestic Fund is a foreign limited liability company, organized under the laws of the state of Delaware, with its last known principal place of business in Connecticut.  Durus Managing Member was the managing member of the Domestic Fund until approximately October 9, 2003.  Thereafter, senior managing member, ISMM, LLC ("ISMM"), became the managing member of the Domestic Fund.    The Domestic Fund has conducted business in Texas generally, has conducted business in Texas by committing the torts as alleged herein in whole or in part in Texas, and otherwise has sufficient contacts with the State of Texas such that under the Texas Long-Arm Statute, this Court has personal jurisdiction over the Domestic Fund.

9.    More specifically, the Domestic Fund knew that its actions would affect Texas entities, including Telesis.   Employees and/or agents of the Domestic Fund sent written communications, such as private placement memoranda, LLC Agreement(s), subscription documents, and investor presentations, to Telesis in Texas, and upon information and belief, other investors in Texas.  Employees and/or agents of the Domestic Fund had telephone calls with Telesis in Texas to discuss investments in the Domestic Fund and the Master Fund.  During these telephone calls, the Domestic Fund made misrepresentations to Telesis, which Telesis relied upon in entering into the LLC Agreement and in making a $5,000,000 capital contribution to the Domestic Fund.  The Domestic Fund's torts and intentional breaches of its duties were directed at Telesis, a Texas investor, and upon information and belief, other Texas investors.

The Domestic Fund's torts and intentional breaches of its duties caused substantial harm to Telesis, a Texas resident.

10.     The Domestic Fund does not maintain a regular place of business or a designated agent upon whom service of process may be had for causes of action arising out of the Domestic Fund's business done in the State of Texas.  Service of process on the Domestic Fund may be made pursuant to Tex. Civ. Prac. & Rem. Code § 17.044(b) and/or §17.044(a)(1) by serving the Secretary of State of Texas as agent for service of process for the Domestic Fund.    The Secretary of State is requested to forward a copy of process with this Complaint to the Domestic Fund at its home office:   International Fund Services (Ireland) Limited, 3rd Floor, Bishops Square, Redmonds Hill, Dublin 2, Ireland.  Because the records of the Delaware Secretary of State and/or other records reflect additional addresses for the Domestic Fund, Telesis requests that the Secretary of State also forward copies of process and this Complaint to the Domestic Fund in care of (1) International Fund Services (N.A.) LLC, Shareholder Services, 12 East 49th Street, 28th Floor, New York, NY 10017; (2) Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware, 19801, and (3) ISMM, LLC at 615 South Dupont Highway, Dover, Delaware, 19901.

## Durus Life Sciences Master Fund Ltd. (the "Master Fund")

11.     The Master Fund is a foreign corporation, organized under the laws of the Cayman Islands, with its last known principal place of business in Connecticut.  Durus Portfolio Manager was the portfolio manager of the Master Fund until approximately September 2003. The Master Fund has conducted business in Texas generally, has conducted business in Texas by committing the torts as alleged herein in whole or in part in Texas, and otherwise has sufficient

contacts with the State of Texas such that under the Texas Long-Arm Statute, this Court has personal jurisdiction over the Master Fund.

12.     More specifically, the Master Fund knew that its actions would affect Texas entities, including Telesis.  Agents of the Master Fund sent written communications, such as private placement memoranda, LLC Agreement(s), subscription documents, and investor presentations, to Telesis in Texas, and upon information and belief, other investors in Texas. Agents of the Master Fund and the Domestic Fund had telephone calls with Telesis in Texas to discuss investments in the Domestic Fund and the Master Fund.  During these telephone calls, the Master Fund made misrepresentations to Telesis, which Telesis relied upon in entering into the LLC Agreement and in making a $5,000,000 capital contribution to the Domestic Fund which was ultimately invested in the Master Fund.  The Master Fund's torts and intentional breaches of its duties were directed at Telesis, a Texas investor, and upon information and belief, other Texas investors.  The Master Fund's torts and intentional breaches of its duties caused substantial harm to Telesis, a Texas resident.

13.     The Master Fund does not maintain a regular place of business or a designated agent upon whom service of process may be had for causes of action arising out of the Master Fund's business done in the State of Texas.  Service of process on the Master Fund may be made pursuant to Tex. Civ. Prac. & Rem. Code § 17.044(b) and/or §17.044(a)(1) by serving the Secretary of State of Texas as agent for service of process for the Master Fund.   The Secretary of State is requested to forward a copy of process with this Complaint to the Master Fund at its home office:   International Fund Services (Ireland) Limited, 3rd Floor, Bishops Square, Redmonds Hill, Dublin 2, Ireland.   Because other records reflect an additional address for the Master Fund, Telesis requests that the Secretary of State also forward copies of process and this

Complaint to the Master Fund at International Fund Services (N.A.) LLC, Shareholder Services, 12 East 49th Street, 28th Floor, New York, NY 10017.

### Scott R. Sacane

14.     Sacane is the managing member of Durus Managing Member and Durus Portfolio Manager and is an individual residing in Connecticut (Durus Managing Member, Durus Portfolio Manager and Sacane are collectively referred to herein as the "Sacane Group"). Sacane, through his agents, has conducted business in Texas generally, has conducted business in Texas by committing the torts as alleged herein in whole or in part in Texas, and otherwise has sufficient contacts with the State of Texas such that under the Texas Long-Arm Statute, this Court has personal jurisdiction over Sacane.

15.     Sacane controlled Durus Managing Member, Durus Portfolio Manager, the Domestic Fund, and the Master Fund and knew his actions would affect Texas entities, including Telesis. Sacane's agents sent written communications, such as private placement memoranda, LLC Agreement(s), subscription documents, and investor presentations, to Telesis, a Texas investor, and upon information and belief, other investors in Texas. Sacane's agents had telephone calls with Telesis in Texas to discuss investments in the Domestic Fund and the Master Fund. During these telephone calls, Sacane's agents made misrepresentations to Telesis, which Telesis relied upon in entering into the LLC Agreement and in making a $5,000,000 capital contribution to the Domestic Fund which was ultimately invested in the Master Fund. Sacane's torts and intentional breaches of his duties were directed at Telesis, a Texas investor, and upon information and belief, other Texas investors. Sacane' torts and intentional breaches of his duties caused substantial harm to Telesis, at Texas resident. In addition, as discussed below, Sacane used Durus Managing Member, Durus Portfolio Manager, the Domestic Fund and the

Master Fund for the purpose of perpetrating, and perpetrated, an actual fraud on Telesis for the direct personal benefit of Sacane.  Accordingly, Durus Managing Member, Durus Portfolio Manager, the Domestic Fund and the Master Fund's corporate veils should be pierced, and Sacane held personally liable.

16.    Sacane does not maintain a regular place of business or a designated agent upon whom service of process may be had for causes of action arising out of Sacane's business done in the State of Texas.  Service of process on Sacane may be made pursuant to Tex. Civ. Prac. & Rem. Code § 17.044(b) and/or §17.044(a)(1) by serving the Secretary of State of Texas as agent for service of process for Sacane.   The Secretary of State is requested to forward a copy of process with this Complaint to Sacane at his home:  5 Hills End Lane, Weston, Connecticut 06883-1340.

## II. JURISDICTION AND VENUE

17.    The Court has jurisdiction pursuant to 28 U.S.C. §1331 because this case arises under the laws of the United States.   More specifically, this Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Securities and Exchange Act of 1934, 15 U.S.C. §78aa, because certain claims asserted herein arise under Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934, as amended, 15 U.S.C. 78j(b) and 15 U.S.C. §78t(a), and Rule 10b-5, 17 C.F.R. §240.10b-5, promulgated thereunder by the Securities Exchange Commission. This Court also has jurisdiction pursuant to 28 U.S.C. §1332 because the matter in controversy exceeds $75,000.00, exclusive of interest and costs, and is between citizens of different states, and 28 U.S.C. §1367 because the Court has supplemental jurisdiction over claims that are so related to claims within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

18.    Venue is proper in this Court pursuant to Section 27 of the Securities and Exchange Act of 1934 and 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to Telesis' claims occurred in this judicial district.

## III. OTHER PROCEDURAL ISSUES

19.    Telesis anticipates filing an arbitration in New York, New York under the Rules of the American Arbitration Association ("AAA") against Durus Managing Member pursuant to the Arbitration provision in § 15.3 of the Second Amended and Restated Limited Liability Operating Agreement dated November 1, 2001 (the "LLC Agreement"). The LLC Agreement was drafted by Durus Managing Member and should be strictly construed against it. Section 15.3 provides that "any claim for money damages between the parties in connection with this Agreement shall be resolved by binding arbitration on an expedited basis in New York, New York in accordance with the then prevailing rules of the American Arbitration Association..." While this provision, taken alone, appears to be written very broadly, §15.3(iii) narrows the authority of the arbitration panel as follows: "the authority of the arbitrators shall be limited to construing and enforcing the express terms of the Agreement." Telesis plans to submit to the arbitration panel its claims against Durus Managing Member, which are required by the LLC Agreement. Telesis hereby submits the remaining claims against Durus Managing Member and all claims against the other Defendants to this Court. Telesis also plans to have this Court incorporate into its judgment any award that Telesis may obtain in the arbitration proceeding, all as expressly contemplated by the LLC Agreement.

20.    Telesis executed a confidentiality agreement with the Domestic Fund and the Offshore Fund dated October 23, 2003 (the "Confidentiality Agreement"). Although it is doubtful that the Confidentiality Agreement requires Telesis to file this Complaint under seal, to

avoid any disputes with the Durus Funds about the Confidentiality Agreement, Telesis requests that this Complaint be filed under seal. Telesis also requests that the Court construe the Confidentiality Agreement, which will be provided to the Court, to determine whether this Complaint and any further pleadings in this action must be filed under seal.

## IV. FACTUAL BACKGROUND

21.     The Domestic Fund was created in October 1999. The Domestic Fund and Durus Life Sciences International Fund Ltd. (the "Offshore Fund") invested substantially all of their assets through a "master-feeder" structure into the Master Fund (the Domestic Fund, the Offshore Fund and the Master Fund are collectively referred to as the "Durus Funds"). The Master Fund and the Offshore Fund are companies incorporated under the laws of the Cayman Islands. The Master Fund invested its assets primarily in equity and equity-related securities of both U.S. and non-U.S. companies in the life sciences industry. As of December 31, 2003, the Domestic Fund owned approximately 55% of the Master Fund.

22.     Durus Managing Member was the managing member of the Domestic Fund until approximately October 9, 2003. Durus Portfolio Manager served as the portfolio manager for the Master Fund, the Domestic Fund and the Offshore Fund until the beginning of September, 2003. Durus Portfolio Manager was paid a management fee for the services it provided to the Domestic Fund pursuant to the LLC Agreement. Durus Managing Member was paid a performance allocation under the terms of the LLC Agreement.

23.     In the spring of 2003, Steve Rush ("Rush"), a partner in Telesis, who was acting on its behalf, spoke on the telephone with Doug Schmidt ("Schmidt"), the Chief Operating Officer of the Domestic Fund and Durus Portfolio Manager to discuss Telesis' possible investment in the Domestic Fund. In June 2003, Rush met with Schmidt and several analysts

from the Sacane Group in their Connecticut office. During those conversations and meetings, Schmidt represented to Rush that the Sacane Group worried about any position over 5% and that only two times did the Master Fund have positions exceeding 10% of the assets of the Master Fund. Schmidt also represented that the Master Fund "usually had 60 to 70 positions" and the "next 24 to 36 months should be a great time for them." Schmidt made these representations to Rush in his capacity as the agent for Defendants. Telesis also received a written investor presentation dated March 2003. This presentation also emphasized a "diversified portfolio" with "generally 50 to 60 positions" and "limits on individual position size." The presentation also touted "active monitoring" which would lead any reasonable investor, including Telesis, to believe that the Domestic Fund, the Master Fund, and the Sacane Group monitored how many shares of a particular stock were owned by the Master Fund.

24. On July 1, 2003, after reviewing the investor presentation and after Rush's conversations with Schmidt, Telesis contributed $5,000,000 to the Domestic Fund which was ultimately invested in the Master Fund through the "master-feeder" structure discussed above. Telesis invested this money based upon the representations of material facts made by Schmidt, the Sacane Group, the Domestic Fund, the Master Fund and contained in the investor presentation regarding the Master Fund's and the Domestic Fund's performance, financial condition, prospects, diversification, and safety. Unfortunately for Telesis, those representations were false and resulted in substantial damages to Telesis.

25. Unbeknownst to Telesis, and upon information and belief, the Sacane Group was involved in an elaborate scheme and course of conduct to generate millions of dollars of additional capital contributions to the Durus Funds, artificially increase the rate of return earned on the investments owned by the Durus Funds, and dramatically increase the management and

performance fees paid by the Durus Funds to the Sacane Group. Upon information and belief, Sacane was the mastermind behind this insidious plan. At all relevant times, the Sacane Group was acting on behalf of themselves and the Durus Funds. Upon information and belief, in furtherance of their scheme, the Sacane Group secretly (without filing the required disclosures with the SEC) began purchasing large quantities of Esperion Therapeutics, Inc. ("Esperion") and Aksys Ltd. ("Aksys") on behalf of the Master Fund. Rather then having a "diversified portfolio" of stocks in the Master Fund as represented to Telesis by the Defendants, the Master Fund was overly concentrated in Esperion and Aksys.

26. As of November 8, 2002, approximately 7 months before Telesis invested in the Domestic Fund, the Master Fund owned approximately 4,374,209 shares of Aksys common stock, which represented approximately 17% of Aksys' issued and outstanding stock. On or about November 12, 2002, the Durus Portfolio Manager (on behalf of the Master Fund) filed a Schedule 13G with the Securities and Exchange Commission ("SEC") reporting its beneficial ownership of 4,374,209 shares of Aksys common stock as of November 8, 2002. By July 24, 2003, the Master Fund had dramatically increased its ownership interest in Aksys and owned 21,333,118 shares of Aksys common stock, which represented approximately 76.7% of Aksys' issued and outstanding shares of stock. Despite more than tripling its ownership of Aksys in approximately 7 months, Durus Portfolio Manager (on behalf of the Master Fund) failed to file with the SEC the required amendments to its Schedule 13G reflecting the material increase in its beneficial ownership in Aksys. It also did not file its initial Schedule 13D with the SEC reflecting its approximately 76.7% ownership in Aksys until July 28, 2003, months after such a filing was required and 4 weeks after Telesis, relying on the representations discussed above, had invested 5 million dollars in the Domestic Fund.

27.     Also, unbeknownst to Telesis, on April 11, 2003, Sacane, on behalf of the Master Fund, signed a stand still agreement with Aksys in which he agreed not to purchase additional shares of Aksys common stock. From April 11, 2003 to the end of July 28, 2003, when the long overdue Schedule 13D was filed, the Master Fund, in violation of the stand still agreement, purchased millions of additional shares of Aksys common stock. Not surprisingly, after the Durus Portfolio Manager (on behalf of the Master Fund) filed its Schedule 13D, Aksys sued the Master Fund for breach of the standstill agreement and various securities law violations relating to the Master Funds' purchases of Aksys stock both before and after the effective date of the standstill agreement, and Aksys also threatened to invoke its "poison pill." During the first six months of 2004, the Master Fund settled these claims by paying Aksys $32,043,784.93 and by providing an additional $15,778,000 to Aksys in the form of a subordinated note. As of March 2005, the Master Fund owned 21,498,118 shares of Aksys common stock, which represents approximately 71.4% of Aksys' issued and outstanding shares of stock.

28.     Prior to Telesis' investment in the Domestic Fund, the Defendants also did not disclose, and Telesis did not know, that the Master Fund owned a substantial percentage of Esperion stock. As of July 24, 2003, the Master Fund owned 31.8 % of the common stock of Esperion. Not surprisingly, the Defendants also failed to disclose to Telesis that the Master Fund had engaged in improper short swing trading of Esperion stock, which resulted in substantial claims against the Master Fund by Esperion. In January 2004, the Master Fund settled Esperion's claims against it for $32,256,637.19.

29.     On January 29, 2004, the Master Fund distributed to the Domestic Fund and the Offshore Fund their interests in the 9,379,000 shares of Esperion common stock held by the Master Fund. This distribution was made so that each of the funds could determine how to

dispose of its beneficial shares of Esperion stock in light of a tender offer made by Pfizer, Inc. The Domestic Fund distributed the shares of Esperion stock pro-rata to its investors based upon their relative interests calculated from the stated net asset values assigned to their respective investments when participants, such as Telesis, invested. Pursuant to this distribution, Telesis received $2,737,000 of Esperion stock.

30.      On or about August 1, 2003, Telesis and the other investors were informed in writing by Sacane and Durus Managing Member of the Master Fund's concentrated positions in Esperion and Aksys. Sacane further informed investors that withdrawal rights in the Domestic Fund were suspended. This disclosure resulted in the Aksys and Esperion lawsuits described above, as well as other claims, and regulatory inquiries by the Securities and Exchange Commission ("SEC") and the Federal Trade Commission ("FTC"). Prior to the August 1, 2003 letter, Telesis did not know about the Master Fund's large, concentrated positions in Esperion and Aksys, its violations of various securities laws, and its millions of dollars of undisclosed liabilities.

31.      In approximately September, 2003, after the disclosure by Sacane, the boards of directors for both the Master Fund and Offshore Fund were replaced with new boards of directors that were not controlled by Sacane (collectively referred to as the "Boards"). This change in control was the result of a vote by the shareholders of the Offshore Fund and a consent executed by the shareholders of the Master Fund. On or about October 9, 2003, Sacane, acting on behalf of Durus Managing Member, executed a resolution assigning the powers of Durus Managing Member of the Domestic Fund to a senior managing member, ISMM, LLC ("ISMM"). The members of ISMM, a Delaware limited liability company, are the same persons who were selected to serve on the new boards of directors for the Master Fund and the Offshore

Fund. On October 14, 2003, ISMM commenced its responsibilities as the managing member of the Domestic Fund.

32. After the change in control of the Master Fund, the Offshore Fund and the Domestic Fund, the Boards and ISMM decided to liquidate the funds. By September 24, 2003, all of the investments held by the Master Fund except for Esperion and Aksys were liquidated. As stated by current management, the assets of the Master Fund have been or will be distributed to the shareholders of the Master Fund (*i.e.* the Domestic Fund and the Offshore Fund) once all of the liabilities have been satisfied or other adequate provisions have been implemented. The Domestic Fund is expected to be liquidated by December 31, 2005 and the remaining assets are expected to be distributed to members of the Domestic Fund in proportion to their respective ownership interests.

33. Upon information and belief, throughout the time period that the Sacane Group was engaging in its scheme to artificially increase the Durus Funds' rate of return by acquiring large quantities of Esperion and Aksys and engaging in short swing trading, they knew or acted in reckless disregard of the fact that they were violating various securities laws, incurring millions of dollars of liabilities on behalf of the Durus Funds, and misleading investors, and prospective investors, in the Durus Funds, including Telesis.

34. Telesis did not know, prior to making its $5,000,000 capital contribution to the Domestic Fund, that the Master Fund had very large concentrated positions in Esperion and Aksys, was in violation of various securities laws, and had millions of dollars of undisclosed liabilities. Had it known any of those facts, it would not have invested in the Domestic Fund.

35. As a result of the misfeasance of the Sacane Group, as of July 1, 2003, the date of Telesis's capital contribution, the net asset value ("NAV") of the Domestic Fund was artificially

inflated and did not reflect the millions of dollars of undisclosed liabilities. The inflated NAV and undisclosed liabilities caused Telesis to receive an inappropriately small share of the Domestic Fund compared to the investors who made their capital contributions prior to July 1, 2003. In a letter dated February 18, 2004, Telesis requested that the NAV be recalculated to properly reflect the NAV as of July 1, 2003, but this request was refused by ISMM and the Domestic Fund.

36.    Telesis also requested in its February 18, 2004 letter, that any costs or liabilities for section 16(b) penalties, sanctions or expenses be accrued as of the date of any section 16(b) gains or violations. Thereby, those investors and capital accounts receiving the benefit of the gains in Aksys and Esperion would be suitably impacted by the costs associated with the section 16(b) gains. Telesis also requested that any liabilities (contingent or real) for any costs or settlement amounts relating to any other portfolio transgressions (e.g. *Aksys v. Sacane* or the Aksys "poison pill" problems) be accrued in the Domestic Fund as of the date of such indiscretions or at the latest the date the financial impact of such actions became "reasonably probable." Both of these fair and reasonable requests were refused.

37.    In March 2005, PriceWaterhouseCoopers ("PWC") completed its audit of the Durus Funds' financial statements. The audited financial statements and a letter dated March 18, 2005 from the board of directors of the Master Fund and the Offshore Fund, and the managing member of the Domestic Fund were sent to Telesis and the other investors. The March 18, 2005 letter informed Telesis that despite the malfeasance of the Sacane Group – the vast majority of which occurred (but was not disclosed) prior to Telesis' investment – the NAVs for January, 2003 through July 2003 would not be restated. Telesis was also informed that the board of the directors for the Master Fund decided that the extraordinary expenses arising from the legal

settlements (i.e the $85,000,000 plus paid in settlements and the legal fees associated with claims) would be recognized during the periods in which the activities of Durus Managing Member and Durus Portfolio Manager that gave rise to such liabilities became known by the Board of the Master Fund (i.e. late July 2003 or early August 2003). In other words, not only did Telesis invest in the Domestic Fund at an inflated NAV and receive a disproportionately small share of the Domestic Fund, but it was also stuck with a pro rata share of millions of dollars of liabilities that were incurred prior to its capital contribution on July 1, 2003.

38.     Investors were also informed that any losses sustained by the artificially inflated NAV were caused by Durus Managing Member and Durus Portfolio Manager and that the Domestic Fund would seek to recover such amounts from, or offset such amounts against, monies which may be due to Durus Managing Member and Durus Portfolio Manager. The notes to the financial statements for the Domestic Fund provided to the investors in March 2005 reflect that as of December 31, 2003, the Domestic Fund has recorded a management fee reserve of $1,877,042 and a performance allocation reserve of $18,241,838.

39.     It would be wrong to allow the Domestic Fund to offset Telesis' claims relating to the artificially inflated NAVs against any monies allegedly owed to Durus Managing Member and Durus Portfolio Manager. The damages sustained by Telesis are different from and greater than those damages sustained by other investors in the Domestic Fund that made their capital contributions prior to July 1, 2003. The Domestic Fund should not be allowed to offset Telesis's claims (claims which the investors prior to July 1, 2003 do not have) against the meritless or weak alleged claims of Durus Managing Member and Durus Portfolio Manager for management and performance fees.

40.     On July 31, 2003, Telesis sent a letter to the Domestic Fund requesting a rescission of Telesis' $5,000,000 investment in the Domestic Fund and the immediate return of this amount to Telesis. The Domestic Fund never responded to this request.

41.     In a letter dated April 1, 2005, Telesis' attorney requested assurances from the Domestic Fund that Telesis and the other investors who made their capital contributions to the Domestic Fund as of July 1, 2003 would be made whole in their capital accounts before prior investors received additional distributions beyond the amounts of their capital accounts. In this letter and a follow up letter dated May 23, 2005, Telesis' attorney also requested a list of the investors in the Domestic Fund. The Domestic Fund has not responded to either of Telesis' requests.

## V. CAUSES OF ACTION

### COUNT I

### Common Law Fraud Against All Defendants

42.     Telesis repeats and realleges the allegations in paragraphs 1-41 as though fully set forth herein.

43.     Defendants have committed common law fraud. Defendants made numerous false representations of past and existing material facts and/or omitted to state material facts concerning an essential part of the investment in the Domestic Fund to Telesis to induce it to enter into the LLC Agreement and to invest $5,000,000 in the Domestic Fund. Defendants had a duty to disclose all of the material facts regarding the Durus Funds to Telesis. Defendants either knew such representations were false at the time, or made them recklessly, as a positive assertion, without knowledge of their truth or falsity. Defendants had actual knowledge of the falsity of the representations made by them or on their behalf. Telesis justifiably relied upon the

representations and omissions in entering into the LLC Agreement and making the $5,000,000 capital contribution to the Domestic Fund. Absent these representations and omissions, Telesis would not have invested in the Domestic Fund. Defendants benefited from the false representations by generating millions of dollars of capital contributions to the Durus Funds, by artificially increasing the rate of return earned on the investments owned by the Durus Funds, and by increasing the management and performance fees earned by the Sacane Group. Defendants' false and misleading representations and omissions proximately caused substantial injury to Telesis. Defendants are therefore liable to Telesis for fraud, for which Telesis is entitled to recover its actual damages.

44.     As discussed above, Sacane used Durus Managing Member, Durus Portfolio Manager, the Domestic Fund and the Master Fund for the purpose of perpetrating, and perpetrated, an actual fraud on Telesis for the direct personal benefit of Sacane. The corporate veils of Durus Managing Member, Durus Portfolio Manager, the Domestic Fund and the Master Fund should be pierced, and Sacane held personally responsible for the damages caused to Telesis by these entities.

45.     Because Defendants have acted intentionally, willfully and maliciously in committing fraud, Telesis asks that exemplary damages be awarded to Telesis.

### COUNT II

#### Negligent Misrepresentation Against Defendants

46.     Telesis repeats and realleges the allegations in paragraphs 1-41 as though fully set forth herein.

47.     Alternatively or cumulatively, Telesis pleads that the facts discussed above establish that Defendants are liable to Telesis for negligent misrepresentation. More specifically,

(a) Defendants had a duty to provide accurate information to Telesis based on Telesis' pecuniary interest in that information; (b) in the course of Defendants' business, they supplied false information for the guidance of Telesis in making the decision to invest $5,000,000 in the Domestic Fund; (3) Defendants did not exercise reasonable care in obtaining or communicating the information to Telesis; (4) Telesis relied justifiably on the false information provided by Defendants; and (5) Telesis suffered a pecuniary loss proximately caused by such reliance. Defendants are therefore liable to Telesis for negligent misrepresentation, for which Telesis is entitled to recover its actual damages.

### COUNT III

#### Negligence and Gross Negligence Against All Defendants

48.     Telesis repeats and realleges the allegations in paragraphs 1-41 as though fully set forth herein.

49.     Alternatively or cumulatively, Telesis pleads that the facts discussed above establish that Defendants have also been negligent and grossly negligent and are liable for Telesis' actual damages.  Defendants owed Telesis a duty to manage the investments in the Domestic Fund and the Master Fund properly, including complying with all of the applicable the securities laws.  Defendants breached their duties to Telesis by failing to use reasonable care in managing the Domestic Fund and the Master Fund and by violating the securities laws, which resulted in millions of dollars of liabilities.  Defendants' breach of their duties caused substantial injury to Telesis.

50.     Defendants' actions with respect to their management of the investments in the Domestic Fund and the Master Fund involved an extreme degree of risk, considering the probability and magnitude of harm to Telesis, and Defendants had actual subjective awareness of

the risk to Telesis, but nevertheless proceeded with conscious indifference to the rights of Telesis.

51.     Defendants' actions were done intentionally, willfully and wantonly or in reckless disregard of the rights of Telesis, and constituted an extreme departure from the ordinary standard of care, thereby justifying an award of exemplary damages.

## COUNT IV

### Breach of Fiduciary Duty Against the Sacane Group

52.     Telesis repeats and realleges the allegations in paragraphs 1-41 as though fully set forth herein.

53.     Telesis pleads that the facts discussed above establish that the Sacane Group is liable to Telesis for breach of their fiduciary duties.  By virtue of their position and control of the Domestic Fund and the Master Fund, the Sacane Group owed fiduciary duties to Telesis, including the duties of good faith, due care and loyalty.  The Sacane Group breached these fiduciary duties, as set forth above.  As a result of these breaches, Telesis has been damaged and is entitled to recover its actual damages.

54.     The Sacane Group's conduct in breaching their fiduciary duties was done intentionally, willfully and wantonly or in reckless disregard of the rights of Telesis, thereby justifying an award of exemplary damages.

## COUNT V

### Aiding and Abetting Breach of Fiduciary Duty Against Sacane

55.     Telesis repeats and realleges the allegations in paragraphs 1-41 and 53-54 as though fully set forth herein.

56.    The facts discussed above establish that Sacane is liable for aiding and abetting Durus Managing Member's and Durus Portfolio Manager's breach of fiduciary duties. Sacane had knowledge of the fiduciary duties owed to Telesis by Durus Managing Member and Durus Portfolio Manager. Sacane aided and abetted Durus Managing Member and Durus Portfolio Manager in breaching such duties by knowingly and substantially assisting Durus Managing Member and Durus Portfolio Manager in the achievement of their breaches through, among other things, his direction, encouragement and advice. As a result of Durus Managing Member's and Durus Portfolio Manager's conduct which was aided and abetted by Sacane, Telesis has been damaged.

57.    Sacane's conduct in aiding and abetting Durus Managing Member's and Durus Portfolio Manager's beach of fiduciary duty was intentional, willful and wanton or in reckless disregard of the rights of Telesis, thereby justifying an award of exemplary damages.

## COUNT VI

### Civil Conspiracy Against All Defendants

58.    Telesis repeats and realleges the allegations in the above paragraphs as though fully set forth herein.

59.    As described above, the Defendants agreed and conspired to engage in unlawful acts, including securities law violations, to increase the capital contributions in the Durus Funds, to increase the rate of return earned on the investments owned by the Durus Funds, and to increase the management and performance fees earned by the Sacane Group. Telesis suffered substantial damages as a result of the Defendants' conspiracy.

60.    Defendants' conduct in engaging in the conspiracy was intentional, willful and wanton or in reckless disregard of the rights of Telesis, thereby justifying an award of exemplary damages.

## COUNT VII

### Breach of Contract Against Durus Managing Member

61.    Telesis repeats and realleges the allegations in paragraphs 1-41 as though fully set forth herein.

62.    As discussed above, Durus Managing Member entered into a contract with Telesis (*i.e.* the LLC Agreement).  Durus Managing Member materially breached the LLC Agreement. More specifically, Durus Managing Member breached sections 5.3.1 (i) and (ii) of the LLC Agreement with Telesis by among other things, engaging in unlawful activity and exceeding the authority granted to Durus Managing Member under the LLC Agreement.  Durus Managing Member never had consent or ratification by all of the members of the Domestic Fund to engage in the unlawful activity described above, which actively made it impossible to carry on the ordinary business of the Domestic Fund.

63.    Telesis has fully or substantially performed all conditions, covenants, and promises to be performed by Telesis pursuant to the LLC Agreement.

64.    Durus Managing Member's breach of the LLC Agreement caused Telesis substantial financial harm and it lost the benefits it expected to receive from the LLC Agreement if Durus Managing Member had performed as promised.  Accordingly, Telesis is entitled to recover its damages from Durus Managing Member.

**COUNT VIII**

**Violations of Section 10(b) of the Securities Exchange Act of 1934
and Rule 10b-5 Against All Defendants**

65.     Telesis repeats and realleges the allegations in paragraphs 1-41 as though fully set forth herein.

66.     Defendants violated Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5 promulgated thereunder.  Telesis' interest in the Domestic Fund is a security for purposes of the federal securities laws.   As described above, Defendants (a) engaged in manipulative and deceptive practices in connection with the purchase and sale of securities; (b) employed a device, scheme, or artifice to defraud Telesis; (c) made untrue statements of material facts and have failed to disclose material facts; (d) engaged in acts, practices, and a course of business which has operated as a fraud and deceit on Telesis; and (e) aided and abetted the perpetration of a fraud on Telesis.  Those acts and omissions were done with scienter and were designed to generate capital contributions to the Durus Funds, misleadingly increase the rate of return earned on the investments owned by the Durus Funds, and increase the management and performance fees earned by the Sacane Group.  Telesis justifiably relied upon the material representations and omissions in entering into the LLC Agreement and making the $5,000,000 capital contribution to the Domestic Fund.  Absent these representations and omissions, Telesis would not have invested in the Domestic Fund.

67.     Defendants' actions caused substantial injury to Telesis, and it seeks to recover its actual damages from Defendants. Telesis is also entitled to recover exemplary damages relating to Defendants' violations of the federal securities laws.

## COUNT IX

### Violations of Section 20(a) of the Securities and Exchange Act of 1934
### Against the Sacane Group

68.    Telesis repeats and realleges the allegations in paragraphs 1-41 as though fully set forth herein

69.    At all relevant times, Sacane, by virtue of his position, control, and specific acts was a controlling person of Durus Managing Member, Durus Portfolio Manager, the Domestic Fund and the Master Fund within the meaning of Section 20(a) of the Securities and Exchange Act of 1934.

70.    Sacane's position made him privy to, and provided him with knowledge of the material facts which Durus Managing Member, Durus Portfolio Manager, the Domestic Fund and the Master Fund misrepresented to Telesis.   Sacane had the power and influence, and exercised such power and influence, to engage in the unlawful conduct described above by causing Durus Managing Member, Durus Portfolio Manager, the Domestic Fund and the Master Fund to make the misrepresentations to Telesis.   Sacane is jointly and severally liable for the substantial damages caused by Durus Managing Member, Durus Portfolio Manager, the Domestic Fund, and the Master Fund's violations of the federal securities laws.

71.    At all relevant times, Durus Managing Member and Durus Portfolio Manager, by virtue of their position, control, and specific acts were controlling persons of the Domestic Fund and the Master Fund within the meaning of Section 20(a) of the Securities and Exchange Act of 1934.

72.    Durus Managing Member and Durus Portfolio Manager's positions and control made them privy to, and provided them with knowledge of the material facts which the Domestic Fund and the Master Fund misrepresented to Telesis.   Durus Managing Member and Durus

Portfolio Manager had the power and influence, and exercised such power and influence, to engage in the unlawful conduct described above by causing the Domestic Fund and the Master Fund to make the misrepresentations to Telesis.  Durus Managing Member and Durus Portfolio Manager are jointly and severally liable for the substantial damages caused by the Domestic Fund and the Master Fund's violations of the federal securities laws.

### COUNT X

### Violations of Sections 7303 and 7323(a)(2) of the Delaware Securities Act Against All Defendants

73.     Telesis repeats and realleges the allegations in paragraphs 1-41 as though fully set forth herein.

74.     Defendants violated Section 7303 and 7323(a)(2) of the Delaware Securities Act. Telesis' interest in the Domestic Fund is a security for purposes of the Delaware Securities Act. As described above, Defendants (a) engaged in manipulative and deceptive practices in connection with the purchase and sale of securities; (b) employed a device, scheme, or artifice to defraud Telesis; (c) made untrue statements of material facts and have failed to disclose material facts in order to make the statements made, in light of the circumstances in which they were made, not misleading; and (d) engaged in acts, practices, and a course of business which has operated as a fraud or deceit upon Telesis.  Those acts and omissions were done with scienter and were designed to generate capital contributions to the Durus Funds, to increase the rate of return earned on the investments owned by the Durus Funds, and to increase the management and performance fees earned by the Sacane Group.  Telesis justifiably relied upon the material representations and omissions in entering into the LLC Agreement and making the $5,000,000 capital contribution to the Domestic Fund.  Absent these representations and omissions, Telesis would not have invested in the Domestic Fund.

75.    Defendants' actions caused substantial injury to Telesis, and it seeks to recover its actual damages from Defendants and the other remedies set forth in Section 7323 of the Delaware Securities Act.

## COUNT XI

### Violations of Section 7323(b) of the Delaware Securities Act Against the Sacane Group

76.    Telesis repeats and realleges the allegations in paragraphs 1-41 and 74-75 as though fully set forth herein.

77.    At all relevant times, Sacane, by virtue of his position, control, and specific acts was a controlling person of Durus Managing Member, Durus Portfolio Manager, the Domestic Fund and the Master Fund within the meaning of Section 7323(b) of the Delaware Securities Act.

78.    Sacane's position made him privy to, and provided him with knowledge of the material facts which Durus Managing Member, Durus Portfolio Manager, the Domestic Fund and the Master Fund misrepresented to Telesis.  Sacane had the power and influence, and exercised such power and influence, to engage in the unlawful conduct described above by causing Durus Managing Member, Durus Portfolio Manager, the Domestic Fund and the Master Fund to make the misrepresentations to Telesis. Sacane is jointly and severally liable for the substantial damages caused by Durus Managing Member, Durus Portfolio Manager, the Domestic Fund, and the Master Fund's violations of the Delaware Securities Act.

79.    At all relevant times, Durus Managing Member and Durus Portfolio Manager, virtue of their position, control, and specific acts were controlling persons of the Domestic Fund and the Master Fund within the meaning of Section 7323(b) of the Delaware Securities Act.

80.    Durus Managing Member and Durus Portfolio Manager's positions and control made them privy to, and provided them with knowledge of the material facts which the Domestic Fund and the Master Fund misrepresented to Telesis.    Durus Managing Member and Durus Portfolio Manager had the power and influence, and exercised such power and influence, to engage in the unlawful conduct described above by causing the Domestic Fund and the Master Fund to make the misrepresentations to Telesis.    Durus Managing Member and Durus Portfolio Manager are jointly and severally liable for the substantial damages caused by the Domestic Fund and the Master Fund's violations of the Delaware Securities Act.

## COUNT XII

### Violations of Article 581-33A of the Texas Securities Act Against All Defendants

81.    Telesis repeats and realleges the allegations in paragraphs 1-41 as though fully set forth herein.

82.    Defendants violated Article 581-33A of the Texas Securities Act.    Defendants offered and sold securities to Telesis within the meaning of the Texas Securities Act.    As described above, Defendants made untrue statements of material fact and/or omitted to state material facts necessary to prevent other statements from being misleading in light of the circumstances under which they were made.    Defendants had actual knowledge of the falsity of the untrue statements made by them or on their behalf.    Telesis justifiably relied upon the untrue statements and omissions in entering into the LLC Agreement and making the $5,000,000 capital contribution to the Domestic Fund.    Absent these untrue statements and omissions, Telesis would not have invested in the Domestic Fund.    Defendants' actions caused substantial injury to Telesis.

83.     In the alternative to Telesis' damage claims pled herein, Telesis pleads that if liability is found under this cause of action, upon tender of its interest in the Domestic Fund, it is entitled to receive its $5,000,000 contribution to the Domestic Fund, plus interest at the legal rate from the date of its capital contribution, less the amount of income received by Telesis on its capital contribution (which is the value of the Esperion received by Telesis in the amount of $2,737,000) and the other remedies set forth in the Texas Securities Act.

## COUNT XIII

### Violations of Article 581-33F(1) of the Texas Securities Act Against the Sacane Group

84.     Telesis repeats and realleges the allegations in paragraphs 1-41 and 82-83 as though fully set forth herein.

85.     By making material misrepresentations in connection with the sale of securities to Telesis, Defendants violated Article 581-33A of the Texas Securities Act, which imposes liability on persons, including entities, who offer or sell securities by means of an untrue statement of material fact.

86.     At all relevant times, Sacane, by virtue of his position, control, and specific acts was a controlling person of Durus Managing Member, Durus Portfolio Manager, the Domestic Fund and the Master Fund within the meaning of Article 581-33(F) of the Texas Securities Act. Sacane's position made him privy to, and provided him with knowledge of the material facts which Durus Managing Member, Durus Portfolio Manager, the Domestic Fund and the Master Fund misrepresented to Telesis. Sacane also culpably participated in Durus Managing Member, Durus Portfolio Manager, the Domestic Fund and the Master Fund's violations of the Texas Securities Act as described above. By reason of the foregoing, Sacane is jointly and severally liable for the substantial damages caused to Telesis by Durus Managing Member, Durus

Portfolio Manager, the Domestic Fund, and the Master Fund's violations of the Texas Securities Act.

87.     At all relevant times, Durus Managing Member and Durus Portfolio Manager, virtue of their position, control, and specific acts were controlling persons of the Domestic Fund and the Master Fund within the meaning of Article 581-33F of the Texas Securities Act. Durus Managing Member and Durus Portfolio Manager's positions and control made them privy to, and provided them with knowledge of the material facts which the Domestic Fund and the Master Fund misrepresented to Telesis. Durus Managing Member and Durus Portfolio Manager also culpably participated in the Domestic Fund and the Master Fund's violations of the Texas Securities Act as described above. Durus Managing Member and Durus Portfolio Manager are jointly and severally liable for the substantial damages caused to Telesis by the Domestic Fund and the Master Fund's violations of the Texas Securities Act.

## COUNT XIV

### Violations of Article 581-33F(2) of the Texas Securities Act Against the Sacane Group

88.     Telesis repeats and realleges the allegations in paragraphs 1-41, 82-83, and 85-87 as though fully set forth herein.

89.     Durus Managing Member, Durus Portfolio Manager, the Domestic Fund and the Master Fund violated the Texas Securities Act as alleged above. Sacane, with the intent to deceive and defraud Telesis, actively and substantially assisted Durus Managing Member, Durus Portfolio Manager, the Domestic Fund and the Master Fund in their violations of the Texas Securities Act, by, among other ways, causing Durus Managing Member, Durus Portfolio Manager, the Domestic Fund and the Master Fund to make the misrepresentations to Telesis. Sacane is jointly and severally liable for the substantial damages caused to Telesis by Durus

Managing Member, Durus Portfolio Manager, the Domestic Fund, and the Master Fund's violations of the Texas Securities Act.

90.    Durus Managing Member and Durus Portfolio Manager, with the intent to deceive and defraud Telesis, actively and substantially assisted the Domestic Fund and the Master Fund in their violations of the Texas Securities Act, by, among other ways, causing the Domestic Fund and the Master Fund to make the misrepresentations to Telesis.    Durus Managing Member and Durus Portfolio Manager are jointly and severally liable for the substantial damages caused to Telesis by the Domestic Fund, and the Master Fund's violations of the Texas Securities Act.

## COUNT XV

### Fraud in the Sale of Stock (Tex. Bus. & Comm. Code §27.01)
### Against All Defendants

91.    Telesis repeats and realleges the allegations in paragraphs 1-41 as though fully set forth herein.

92.    Defendants' conduct described above in connection with Telesis' investment in the Domestic Fund also violates Texas Business and Commerce Code §27.01, *et seq*. Defendants made false representations of material facts, knowing that such representations were false or with reckless disregard without knowledge of the truth.    Defendants made the representations for the purpose of inducing Telesis to enter into the LLC Agreement and to invest $5,000,000 in the Domestic Fund.  Telesis justifiably relied upon the representations and omissions in entering into the LLC Agreement and making the $5,000,000 capital contribution to the Domestic Fund.    Absent these representations and omissions, Telesis would not have invested in the Domestic Fund. Defendants' false and misleading representations and omissions proximately caused substantial injury to Telesis. Defendants are therefore liable to Telesis for

violation of the Texas Business and Commerce Code §27.01, *et seq*, for which Telesis is entitled to recover its actual damages.

93.     Because Defendants have acted intentionally, willfully and maliciously in committing fraud, Telesis asks that exemplary damages be awarded to Telesis.

**COUNT XVI**

**Request for a Preliminary and Permanent Injunction
Against the Domestic Fund**

94.     Telesis repeats and realleges the allegations in paragraphs 21-41 as though fully set forth herein.

95.     In accordance with Rule 65 of the Federal Rules of Civil Procedure, Telesis moves this Court for preliminary and permanent injunction orders enjoining the Domestic Fund from: disposing, disbursing, depleting, exhausting, spending, or otherwise using the final $2,263,000, at a minimum, of the management fee reserve of $1,877,042 and the performance allocation reserve of $18,241,838 (the "Reserves"), which are reflected in the notes to the financial statements for the Domestic Fund dated December 31, 2003 and provided to Telesis in March 2005, until all disputes between the parties, including the satisfaction of any judgments awarded to Telesis herein, and any declaratory judgments, have been fully and finally concluded.

96.     There is a substantial likelihood that Telesis will succeed on the merits of this lawsuit. There exists a substantial threat that irreparable injury to Telesis will result if the preliminary injunction is not granted. If the Domestic Fund spends or disburses to its members the Reserves including any portion of its last $2,263,000 before this Court can award damages and declaratory relief owed to Telesis, and before those awards and declaratory relief are satisfied by the Domestic Fund, then Telesis will likely never be able to recover the damages and

relief that it is rightfully owed.    Upon final hearing, Telesis requests that the temporary injunction be made permanent.

97.    The threatened injury to Telesis by the Domestic Fund's irretrievable spending or disbursement of the Reserves down to $2,263,000 or less substantially outweighs any threatened harm to the Domestic Fund posed by the injunctive relief requested by Telesis.

98.    Granting the preliminary injunction will not disserve the public interest.  In fact, the public interest is served by ensuring that a person injured by violations of the securities laws and other unlawful conduct will be compensated for its damages.

## COUNT XVII

### Request for Declaratory Judgment Against the
### Domestic Fund and the Master Fund

99.    Telesis repeats and realleges the allegations in paragraphs 1-41 as though fully set forth herein.

100.    Telesis seeks a declaratory judgment under Rule 57 of the Federal Rules of Civil Procedure against the Domestic Fund and the Master Fund relating to Telesis' right to a fair and just determination of the NAV of the Domestic Fund as of July 1, 2003 and the recognition of the liabilities incurred by the Domestic Fund and the Master Fund.  There exists a justiciable controversy between the Domestic Fund, the Master Fund and Telesis, of sufficient immediacy and reality, which is ripe for adjudication, to warrant the issuance of Telesis' requested declaratory judgment.

101.    As discussed above, the NAV of the Domestic Fund was artificially inflated on July 1, 2003 and did not reflect the millions of dollars of undisclosed liabilities incurred by the fund.  The inflated NAV and undisclosed liabilities caused Telesis to receive an inappropriately

small share of the Domestic Fund compared to the investors who made their capital contributions prior to July 1, 2003.

102.   Section 2.29 of the LLC Agreement which created the Domestic Fund provides that:

> 'Net Asset Value' means at any date the total assets of the Company [*i.e.* the Domestic Fund] including all cash and cash equivalents (valued at market plus accrued interest), accrued interest and the market value of all Securities and other assets of the Company, **less all Company liabilities,** including accrued but unpaid Management Fees and Performance Allocations, with each determined on the basis of generally accepted accounting principals in the United States, consistently applied under the accrual method of accounting ("GAAP"). (emphasis added)

Contrary to this provision, ISMM, the managing member of the Domestic Fund as of October 2003, decided that despite the malfeasance of the Sacane Group – the vast majority of which occurred (but was not disclosed) prior to Telesis' investment – the Domestic Fund's NAVs for January, 2003 through July 2003 would not be restated.   The Domestic Fund has improperly refused, despite requests from Telesis, to recalculate the correct NAV for the Domestic Fund as of July 1, 2003.

103.   Also contrary to Telesis' rights, the Domestic Fund has informed Telesis that it may offset the damages owed to Telesis because of the artificially inflated NAV and undisclosed liabilities against monies which the Domestic Fund may owe to Durus Managing Member and Durus Portfolio Manager.   Telesis' claims are different from and greater than those damages sustained by other investors in the Domestic Fund that made their capital contributions prior to July 1, 2003, and Telesis would be substantially damaged if the Domestic Fund offset Telesis' claims in this manner.

104. Also contrary to Telesis' rights, and the Master Fund has determined that it would recognize the extraordinary expenses arising from the legal settlements (*i.e.* the $85,000,000 plus paid in settlements and the legal fees associated with claims) during the periods in which the Board became aware of the activities that gave rise to such liabilities, not during the periods in which the activities that gave rise to such liabilities occurred. This method of recognizing liabilities unfairly prejudices Telesis, and substantially decreases the value of its capital contribution in the Domestic Fund.

105. Telesis seeks a declaration from the Court that (1) the Domestic Fund must recalculate the NAV of the Domestic Fund as of July 1, 2003 to determine the true and correct value considering incurred liabilities; and (2) that the Domestic Fund is not allowed to offset the damages owed to Telesis because of the artificially inflated NAV and undisclosed liabilities against any monies which the Domestic Fund may owe to Durus Managing Member and Durus Portfolio Manager or claims asserted thereon.

106. In the alternative, if the Court does not agree that Section 2.29 of the LLC Agreement is clear that the NAV for the Domestic Fund as of July 1, 2003 should be calculated by subtracting all of the Domestic Fund's liabilities, as contended by Telesis, then Telesis pleads that Section 2.29 of the LLC Agreement is at least susceptible to more then one reasonable meaning and is ambiguous with the parties' intent to be determined by the trier of fact.

107. Telesis also seeks a declaration from the Court that the Master Fund is required to recognize the extraordinary expenses arising from the legal settlements (*i.e.* the $85,000,000 plus paid in settlements and the legal fees associated with claims) during the periods in which the activities that gave rise to such liabilities occurred.

## COUNT XVIII

### Damages Against All Defendants

108.    Telesis repeats and realleges the allegations in the above paragraphs as though fully set forth herein.

109.    Telesis requests an award of actual damages in the amount of at least $5,000,000 as described above, together with interest thereon at the legal rate from the time of its investment until the award, less the value of the Esperion stock it received in the amount of $2,737,000.

110.    In the alternative to Telesis' damage claims pled herein, Telesis requests that if liability is found under the Texas Securities Act, upon tender of Telesis' interest in the Domestic Fund, it is entitled to receive its $5,000,000 contribution to the Domestic Fund, plus interest at the legal rate from the date of its capital contribution, less the amount of income received by Telesis on its capital contribution (which is the value of the Esperion received by Telesis in the amount of $2,737,000).

111.    In addition, Telesis seeks an award of punitive or exemplary damages in amounts 3 times the total actual damages because of Defendants' fraud and gross negligence.

112.    It has been necessary for Telesis to retain the undersigned attorneys to pursue its claims asserted herein, and therefore Telesis seeks an award of reasonable and necessary attorneys' fees against Defendants.

113.    Telesis requests an award of costs, pre-judgment and post-judgment interest as provided by law.

### VI. JURY DEMAND

114.    Telesis demands a trial by jury.

WHEREFORE, PREMISES CONSIDERED, Telesis requests that upon service of citation and due notice, the Court hear and grant Telesis' request for a preliminary injunction as set forth above, and upon final hearing of this matter, it have judgment against the Defendants for the damages described above, permanent injunctive relief, a declaratory judgment, for recovery of its costs, and for all other relief to which Telesis may show itself justly entitled.

Respectfully submitted,

Corbet F. Bryant, Jr.
   State Bar No. 03280000
Carolyn Raines
   State Bar No. 00787852
CARRINGTON, COLEMAN, SLOMAN &
   BLUMENTHAL, L.L.P.
200 Crescent Court, Suite 1500
Dallas, Texas 75201
TELEPHONE: (214) 855-3000
FACSIMILE: (214) 855-1333

*ATTORNEYS FOR TELESIS, II*

## VERIFICATION

STATE OF TEXAS          §
                        §
COUNTY OF DALLAS        §

BEFORE ME, the undersigned authority, on this day personally appeared Steve Rush, who being by me duly sworn on his oath deposed and stated that he is a partner of Telesis, II, that he is authorized to make this verification, that he has read the above and foregoing Telesis, II's Original Complaint and Verified Application for Temporary Injunction, and that the statements of fact contained in ¶¶ 21-41, and 94-98 are within his personal knowledge, including information in the business records he has reviewed, and are true and correct.

_____

SUBSCRIBED AND SWORN TO before me on the ___day of June, 2005, to certify which witness my hand and seal of office.

_____
Notary Public for the State of Texas

My Commission expires: 03-01-2006

TONI K RUDEN
NOTARY PUBLIC
State of Texas
Comm. Exp. 03-01-2006

K

℞JS 44 (Rev 11/04)

# CIVIL COVER SHEET

220508

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

RECEIVED
JUN 29 2005
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

ORIGINAL

3-05CV1321-K

## I. (a) PLAINTIFFS
Telesis, II

### DEFENDANTS
Durus Capital Management (N.A.), LLC
Durus Capital Management, LLC
Durus Life Sciences Fund, LLC (see attached)

(b) County of Residence of First Listed Plaintiff  Dallas County, TX
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Carrington, Coleman, Sloman & Blumenthal, L.L.P., 200 Crescent
Court, Suite 1500, Dallas, TX 75201; Corbet F. Bryant, Jr. (see attached)

Attorneys (If known)

## II. BASIS OF JURISDICTION  (Place an "X" in One Box Only)

☐ 1  U.S. Government
　　　Plaintiff

☒ 3  Federal Question
　　　(U.S. Government Not a Party)

☐ 2  U.S. Government
　　　Defendant

☐ 4  Diversity
　　　(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)　　　　　　　　　　and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT  (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | 　　　Med. Malpractice | ☐ 625 Drug Related Seizure | 　　　28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | 　　　Liability | ☐ 365 Personal Injury - | 　　　of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | 　　　Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| 　　& Enforcement of Judgment | 　　　Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | 　　　Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | 　　　Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | 　　　Liability | 　　　Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| 　　Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | 　　　Safety/Health | | ☐ 490 Cable/Sat TV |
| 　　(Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | 　　　Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☒ 850 Securities/Commodities/ |
| 　　of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | 　　　Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | 　　　Property Damage | 　　　Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | 　　　Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 　　　12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | 　　　Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | 　　　Injury | | 　　　& Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | 　　　Sentence | ☐ 791 Empl. Ret. Inc. | 　　　or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | 　　　Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | 　　　Accommodations | ☐ 530 General | | 　　　26 USC 7609 | 　　　Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | 　　　Under Equal Access |
| | 　　　Employment | ☐ 550 Civil Rights | | | 　　　to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | 　　　Other | | | | 　　　State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN  (Place an "X" in One Box Only)

☒ 1  Original
　　　Proceeding

☐ 2  Removed from
　　　State Court

☐ 3  Remanded from
　　　Appellate Court

☐ 4  Reinstated or
　　　Reopened

☐ 5  Transferred from
　　　another district
　　　(specify)

☐ 6  Multidistrict
　　　Litigation

☐ 7  Appeal to District
　　　Judge from
　　　Magistrate
　　　Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Brief description of cause:  15 U.S.C. § 78j(b); 15 U.S.C. § 78t(a); Securities Fraud Action under Section 10(b) and 20(a) of the
Securities and Exchange Act of 1934

## VII. REQUESTED IN  COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION
　　UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S)  IF ANY
(See instructions):
JUDGE

DOCKET NUMBER

DATE
June 29, 2005

SIGNATURE OF ATTORNEY OF RECORD
Corbet F. Bryant Jr.

**FOR OFFICE USE ONLY**

RECEIPT #　　　　AMOUNT　　　　APPLYING IFP　　　　JUDGE　　　　MAG JUDGE

Attachment to Civil Cover Sheet

1 (a) DEFENDANTS:  (cont.)

        Durus Life Sciences Master Fund Ltd., and
        Scott R. Sacane

1(c) Attorneys:  (cont.)
       and Carolyn Raines